Jerome W. Dewald
30 W. 63rd St, Apt 8V
New York, NY 10023
Phone: (212) 365-8451
Email: jeromekjerome@gmail.com
*Plaintiff in Pro Per*

19 CV 6388

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JEROME W. DEWALD** | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **BLACK TUSK GLOBAL, LLC, a Delaware limited liability company; BROAD PINE CAPITAL, LLC, a Delaware limited liability company; STEPHEN INGLIS, an individual,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff in *Pro Per* Jerome Dewald, ("Plaintiff") for his Complaint against Defendants Black Tusk Global, LLC, a Delaware limited liability company, Broad Pine Capital, LLC a Delaware limited liability company and Stephen Inglis, an individual (collectively referred to herein as "Defendants"), hereby alleges as follows:

### NATURE OF THE ACTION

1.     This matter arises out of the fraudulent, unlawful sale of certain securities, false misrepresentations and material omissions committed by Defendants, through its managing member Stephen Inglis.

2.     Plaintiff seeks to recover damages for violations of the law of the State of New York and federal securities laws under Sections 12(a)(1) and 15(a) of the Securities Act of 1933

(the "Securities Act" [15 U.S.C. §§ 77l(a)(1) and 77o(a)] and Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b), 78t(a) and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5] (the "Exchange Act Claims") against Defendants.  Plaintiff purchased or otherwise subscribed to purchase equity interest in Defendant Broad Pine Capital.

3.      The Exchange Act Claims are based on Defendants' fraudulent and manipulative schemes through false or misleading statements of fact and failing to disclose material information.

4.      Defendants' misrepresentations and omissions were material because they were designed to, and did entice Plaintiff into subscribing and/or purchasing unregistered securities which were nothing but a vehicle for Defendants' personal enrichment.

5.      As a result of Defendants' fraudulent conduct as alleged herein, Plaintiff invested in Defendants' securities and suffered financial harm.  For these reasons, Plaintiff seeks to recover monetary damages for harm caused by the wrongful conduct set forth herein.

## PARTIES, JURISDICTION AND VENUE

6.      Plaintiff Jerome Dewald is an individual who is a resident and citizen of New York.

7.      Upon information and belief, Defendant Black Tusk Global, LLC is a limited liability company domiciled in the State of Delaware and transacting business in the State of New York ("Black Tusk Global").

8.      Upon information and belief, Defendant Broad Pine Capital, LLC is a limited liability company domiciled in the State of Delaware and transacting business in the State of New York ("Broad Pine Capital").

9.      Upon information and belief, Defendant Stephen Inglis is an individual and a

Canadian citizen.   At all times material herein, Defendant Inglis was a resident of New York City, New York.   Upon information and belief, Defendant Inglis now resides in the District of Puerto Rico.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, Section 22 of the Exchange Act, 15 U.S.C. § 78v, and Section 27 of the Securities Act, 15 U.S.C. § 78aa, because Plaintiff alleges violations of Sections 10 and 20 of the Exchange Act, Rule 10-b5, and Sections 5, 12 and 15 of the Securities Act.

11.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a), because the fraud claim is so related to Plaintiff's claims under the Exchange Act and Securities Act that it forms part of the same case or controversy.

12.     The Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in the District for jurisdictional purposes of has sufficient minimal contacts with this District as to render the exercise of jurisdiction by this Court permissible.

13.     Venue is proper in this District under Section 27 of the Exchange Act (15 U.S.C. § 78aa) and Section 22 of the Securities Act, 15 U.S.C. § 77v, as well as under 28 U.S.C. § 1391, because: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money hereby doing business here and engaging in activities having an effect in this District.

## FACTUAL ALLEGATIONS

14.     Plaintiff is an investor in the emerging legal cannabis market.

15.     Defendant Inglis is a stockbroker who expressed interest in cannabis investments

and wanted to start his own brokerage firm with a focus point being cannabis investments.

16.     Inglis proposed to Plaintiff that his limited liability company, Black Tusk, would buy Richman Group Securities, an existing broker-dealer and change the management and Plaintiff would buy membership in that Company (the "Transaction").

17.     Plaintiff agreed to invest $22,500 and on August 16, 2016 an unsecured convertible promissory note ("Note") was drafted by Inglis, on behalf of Black Tusk and signed. *See* Unsecured Convertible Promissory Note dated August 16, 2016, attached hereto as Exhibit A and incorporated herein by this reference.

18.     On this same date, Inglis, drafted and signed a Personal Guaranty guaranteeing payment related to the Transaction and Note. *See* executed Personal Guaranty attached hereto as Exhibit B and incorporated herein by this reference.

19.     Inglis let Plaintiff to believe that there were other investors but Plaintiff was never made aware of any other investors.

20.     The agreement between the parties was that Plaintiff would provide Inglis with the funds he needed and once the broker-dealer was purchased by Inglis, Plaintiff's funds would be converted into membership.  Plaintiff was to be a member of the broker-dealer and Plaintiff would be sponsored for a license, which would help him with his investments.

21.     On April 23, 2018, Inglis provided Plaintiff with a Subscription Agreement (the "Subscription Agreement") whereby Plaintiff is granted 14.0625 percent membership interest in Broad Pine.  Broad Pine was alleged to be the broker-dealer company.  Both Plaintiff and Inglis signed the Agreement. *See* copy of the Subscription Agreement attached hereto as Exhibit C and incorporated herein by this reference.

22.     Upon information and belief, Defendant Inglis breached the terms of the Note by

failing to perform any of the terms outlined therein and allegedly converted Plaintiff's funds into membership interest in Broad Pine.

23.     Plaintiff was never provided any documentation evidencing his membership interest in Broad Pine.

24.     When Plaintiff would ask about the status of the entity and progress being made, Inglis would placate Plaintiff explaining what stage of the process they were supposedly in.

25.     On December 30, 2018 Plaintiff received an email from Inglis stating "I decided that it was best to dissolve BPC before the end of 2018 so those who committed capital can realize the tax loss."  Inglis further stated that "[n]o taxes were ever filed nor K-1s issued…"  *See* email from Stephen Inglis to Plaintiff dated December 30, 2018 attached hereto as Exhibit D and incorporated herein by this reference.

26.     Pursuant to the terms of the Note, Defendant was to return all monies to Plaintiff. To date, Defendant has failed to return any monies to Plaintiff.

## COUNT ONE
## Violation of Section 10(b) of the Exchange Act and Rule 10b-5

27.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

28.     This Count is brought pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, against Defendants.

29.     Defendants, directly or indirectly, by use of the means and instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly, employed devices, schemes, or artifices to defraud, and engaged in acts, practices, and courses of business which operate or would operate as fraud or deceit.

30.     Defendants made untrue statements of material fact and omitted material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

31.     Had Plaintiff known the truth about investment, he would not have given Defendants $22,500.

32.     As a direct and proximate result of the Defendants wrongful conduct, Plaintiff suffered damages in connection with his investment.

## COUNT TWO
### Violation of Section 20(a) of the Securities Act
### Against Stephen Inglis

33.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

34.     This Count is asserted against Defendant Stephen Inglis under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

35.     Due to his ownership interest in and control over Defendants, and by virtue of his position as managing member, and participation in and awareness of the wrongdoing complained of herein, Defendant Inglis had the power to influence and control he did influence and control, directly the decision making relating to the wrongdoing complained of herein, including the decision in the sale of unregistered securities as set forth herein.

36.     By virtue of the foregoing, Defendant Inglis is liable to Plaintiff as control person of Defendants under Section 20(a) of the Securities Act.

37.     As a direct and proximate result of Defendant Inglis wrongful conduct, Plaintiff suffered damages in connection with his investment.

## COUNT THREE
### Violation of Sections 5 and 12(a)(1) of the Securities Act

38.     Plaintiff incorporates by reference each and every preceding paragraph as though

fully set forth herein.

39.     This Count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e and 77l(a)(1), against Defendants.

40.     The Promissory Note and membership interest in Broad Pine Capital are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

41.     Defendants promoted, offered and/or sold securities by selling membership interest in Broad Pine Capital.

42.     Defendants are issuers, underwriters and/or necessary participants of/in the sales shares in Broad Pine Capital.

43.     No Defendant or other person filed with the SEC a registration statement for the offer and sale of shares in Broad Pine Capital, no registration was in effect at the time Plaintiff made his investment, and no exemptions to the registration requirements was available.

44.     Defendants used the instrumentalities of interstate commerce in connection with the offer and sale of shares of Broad Pine Capital.

## COUNT FOUR
### Violation of Section 15 of the Securities Act
### Against Stephen Inglis

45.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

46.     This Count is asserted against Defendant Stephen Inglis under Section 15 of the Exchange Act, 15 U.S.C. § 77o.

47.     Due to his ownership interest in and control over Defendants, and by virtue of his position as managing member, and participation in and awareness of the wrongdoing complained of herein, Defendant Inglis had the power to influence and control he did influence and control,

directly the decision making relating to the wrongdoing complained of herein, including the decision in the sale of unregistered securities as set forth herein.

48.     By virtue of the foregoing, Defendant Inglis is liable to Plaintiff as control person of Defendants under Section 15 of the Securities Act.

49.     As a direct and proximate result of Defendant Inglis wrongful conduct, Plaintiff suffered damages in connection with his investment.

## COUNT FIVE
### Breach of Contract

50.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

51.     The Promissory Note constitutes a contract between Plaintiff and Defendant Black Tusk Global.

52.     Defendant Black Tusk Global has breached the express terms of the Promissory Note by failing to complete the "Closing" as the term is defined in the Promissory Note.

53.     Plaintiff performed all of his obligations under the Promissory Note.

54.     As a direct and proximate result of the breach of the Promissory Note, Plaintiff has suffered damages in the principal amount of Twenty-Two Thousand Five Hundred and No/100 Dollars ($22,500).

## COUNT SIX
### Breach of Covenant of Good Faith and Fair Dealing

55.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

56.     The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits

of the contract.

57.     Defendants' actions described above breached the covenant of good faith and fair dealing and were undertaken with conscious disregard to the interest and right of Plaintiff.

58.     Plaintiff was injured in an amount of $22,500 as a result of Defendants' breach of the covenant of good faith and fair dealing.

**COUNT SEVEN**
**Violation of Common Law Fraud**

59.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

60.     Defendant made numerous material misrepresentations of fact, and knowingly omitted to state numerous other material facts, of which he had superior knowledge, for the purpose of inducing reliance and action by Plaintiff.

61.     Plaintiff was not aware of the falsity of Defendants' representations and omission, since the falsity of Defendants' representations and commissions were non-obvious and not readily discoverable through reasonable investigation.

62.     Defendants made these material misrepresentations and omissions with the intent of inducing Plaintiff to invest in Defendants' securities.

63.     Plaintiff justifiably relied upon Defendants' representations in investing in Defendants' securities.   But for Defendants' material misrepresentations and omissions, Plaintiff would not have done so.

64.     Plaintiff has suffered substantial economic damages as a direct result of the misrepresentations of the Defendants fraudulent conduct, and is therefore entitled to relief.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

A.  Requiring Defendants to pay damages sustained by Plaintiff by reason of the acts and transactions alleged herein;

B.  Declaring that Defendants offered and sold unregistered securities in violation of the federal securities laws;

C.  Declaring that Defendants are liable to Plaintiff under Sections 10(b) and/or 20(a) of the Exchange Act and/or Sections 5, 12(a)(1), and/or 15(a) of the Securities Act;

D.  Declaring that Defendants are liable to Plaintiff due to their breach of contract and fraudulent misrepresentation;

E.  Ordering rescission of the investments made by Plaintiff in the unregistered securities, and/or compensatory damages in an amount to be proven at trial;

F.  Awarding Plaintiff pre-judgment interest at the statutory rate of 9% per annum pursuant to CPLR §§ 5001 and 5004;

G.  Awarding Plaintiff his reasonable costs and expenses incurred in this action; and

H.  Awarding such equitable or other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  .July _____, 2019

By: _____

Jerome Dewald
Plaintiff In Pro Per

# Exhibit A

Convertible Note into Equity Membership Interest of a FINRA Broker Dealer
# Black Tusk Global LLC

**A Delaware Corporation**

**Unsecured Convertible Note**

**Nominal $22,500.00**

DATE:  August 1st, 2016

**For Funds  Received**, from Jerome Dewald (Investor),  the undersigned, **Black Tusk Global LLC, a** Delaware corporation (hereinafter "Black Tusk" or "Company"), will immediately  convert this Note into a Membership Interest in Broad Pine Capital LLC, or whichever entity the Financial Industry Regulatory Authority (FINRA) Broker Dealer (BD) Membership currently known as Richman Group Securities, Inc. is held (the "Firm").  The Company represents that it has the right to offer an ownership interest in Richman Group Securities Inc., the Firm, up to a maximum of 24.9%, as evidenced by the attached letter agreement, dated July 29, 2016, between Broad Pine Holdings LLC, and Stephen Inglis, Managing Member of Black Tusk Global LLC.

The conversion ratio shall be equal to the face value of the note, $22,500, divided by the "regulatory capital" in place at the time of the first "Closing", defined as 30-45 days after the Continuing Membership Application (CMA) is filed with FINRA, or incremental time as prescribed by FINRA when the new management is permitted to assume control of the Firm.  "Regulatory capital" is defined as the total annual operating costs for the BD as reflected on the CMA plus $80,000 (acquisition cost plus CMA cost).  The ratio and equity ownership to the Investor may not exceed 24.9 per cent and therefore no closing shall take place with less than $90,000 of regulatory capital in place at the time of Closing. For clarity and example and as reflected by the best estimate available at the time of signing, if the Capital recognized by Finra at Closing is $189,208, the Note will convert to a 11.892 percent equity interest in the Firm owning the BD.

If for any reason there is no closing or the CMA is withdrawn, the Investor will be repaid the nominal value of the Note, $22,500 in full on the first business day of the month following the withdrawal month.

All reasonable costs, expenses and expenditures including, and without limitation, the reasonable legal costs incurred by the Investor in enforcing this Note as a result of any default by the Company, will be added to the principal then outstanding and will immediately be paid by the Company. If any term, covenant, condition or provision of this Note is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be reduced in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Note will in no way be affected, impaired or invalidated as a result.

This Note will be construed in accordance with and governed by the laws of New York.

This Note will enure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns of the Company and the Investor.  The Company waives presentment for payment, notice of non-payment, protest and notice of protest.

Correspondence with Black Tusk may be mailed or emailed to Black Tusk LLC, 9 Beechwood Rd, Irvington, NY 10533 or email stephen@blacktuskglobal.com  **Funds received for this Note should be paid to Black Tusk's Agent, Morgan Enterprise Holdings LLC by wire transfer to: Citibank Fed wire routing /ABA; 021000089 account: 4997510990**

In exchanging funds ($22,500) for this Convertible Note the Investor acknowledges the following **Representations and Warranties**. The Investor hereby represents and warrants to the Company as follows:

(a)  the Investor is over 21 years of age, and a resident of New York State, and  the Investor has no present intention of becoming a resident of any other state or jurisdiction in the foreseeable future, and (ii) this Convertible Note has been duly authorized, executed and delivered by the Investor and is valid, binding and enforceable;

(b) the execution, delivery and performance by the Investor of this Convertible Note  will not result in any material breach of any terms or provisions of, or constitute a material default under, any material contract, Convertible Note or instrument to which the Investor is a party or by which the Investor is bound;

(c) the Investor is acquiring the Convertible Note for investment for its own account and not with a view to, or for sale in connection with, the distribution or other disposition thereof;

(d) the Investor has been advised by the Company that:

(i)  the offer and sale of the Convertible Note have not been registered under the Securities Act;

(ii) there is no established market for the Convertible Note and it is not anticipated that there will be any public market for the Convertible Note in the foreseeable future, and so it may not be possible for the Investor to liquidate his investment; and

(iv) the Convertible Note may not be disposed of without registration under the Securities Act or in reliance on an exemption from such registration;

(e) (i) the Investor's financial situation is such that he can afford to bear the economic risk of holding the Convertible Note for an indefinite period of time, has adequate means for providing for his current needs and personal contingencies, and can afford to suffer a complete loss of his investment in the Convertible Note; (ii) the Investor's knowledge and experience in financial and business matters are such that he is capable of evaluating the merits and risks of an investment in the Convertible Note (iii) the Investor understands that the Convertible Note is a speculative investment which involves a high degree of risk of loss; (iv) the Investor understands the risk factors related to the purchase of the Convertible Note, and, other than as set forth in this Convertible Note, no representations or warranties have been made to the Investor concerning the  Convertible Note or the Company; (v) the Investor has been given the opportunity to examine all documents and to ask questions of, and to receive answers from, the Company and its representatives concerning the

Company and the terms and conditions of the purchase of the Convertible Note and to obtain all additional information which the Investor or his representatives deem necessary; (vi) in making its decision to purchase the Convertible Note hereby subscribed for, the Investor has relied upon his own independent investigations and, to the extent believed by him to be appropriate, his own professional, financial, tax and other advisors; and (vii) the Investor is an "accredited investor" within the meaning of Rule 501 of Regulation D under the Securities Act.

**IN WITNESS WHEREOF,** Black Tusk has fully executed this Convertible Note as of the date first above written.

## Black Tusk Global LLC
**A Delaware Corporation**

Stephen Inglis, CFA
Managing Member

# Exhibit B

## Personal Guaranty

Whereas, <u>Black Tusk Global LLC</u>, (hereinafter called the "Borrower"), desires to transact business with and obtain credit or a continuation of credit from <u>Jerome W. Dewald</u>, a natural person (hereinafter called "Creditor");

Whereas, Creditor is unwilling to extend or continue credit to the Borrower unless it receives a guaranty of the undersigned, <u>Stephen Inglis, CFA, managing member of Black Tusk Global LLC</u>, covering the Liabilities of the Borrower to Creditor, as hereinafter defined.

Now, therefore, in consideration of the premises and of other good and valuable consideration and in order to induce Creditor from time to time, in its discretion, to extend or continue credit to the unconditionally, to Creditor the payment of all liabilities of the Borrower to Creditor of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by Creditor by assignment or otherwise, whether matured or unmatured and whether absolute of contingent (all of which are herein collectively referred to as the "Liabilities of the Borrower").

The undersigned agrees that, with or without notice or demand, the undersigned shall reimburse Creditor, to the extent that such reimbursement is not made by the Borrower, for all expenses (including counsel fees) incurred by Creditor in connection with any of the Liabilities of the Borrower or the collection thereof.

This guaranty is a continuing guaranty and shall remain in full force and effect irrespective of any interruptions in the business relations of the Borrower with Creditor; provided, however, that the undersigned may be noticed in writing, delivered personally to or received by registered mail by the Credit Manager of Creditor at Creditor's Address, terminate this guaranty with respect to all Liabilities of the Borrower incurred or contracted by the Borrower or acquired by Creditor after the date on which such notice is so delivered or received.

All monies available to Creditor for application in payment or reduction of the Liabilities of the Borrower may be applied by Creditor in such manner and in such amounts and at such time or times as it may see fit to the payment or reduction of such of the Liabilities of the Borrower as Creditor may elect, and the obligations pursuant to this guaranty shall not be affected by any surrender or release by the Borrower of any other security held by it for any claim hereby guaranteed.

The undersigned hereby waives (a) notice of acceptance of this guaranty and of extensions of credit by Creditor to the Borrower (b) presentment and demand for payment of any of the Liabilities of the Borrower (c) protest and notice of dishonor or default to the undersigned or to any other party with respect to any of the Liabilities of the Borrower; (d) all other notices to which the undersigned might otherwise be entitled; and (e) any demand for payment under this guaranty.

This is a guaranty of payment and not of collection and the undersigned further waives any right to require that any action be brought against the Borrower or any other person or to require that: resort be had to any security or to any balance of any deposit account or credit on the books of Creditor in favor of the Borrower or any other person.

No delay on the part of Creditor in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the undersigned shall be deemed to be a waiver of the obligations of the undersigned or of the right of Creditor to take further action without notice or demand as provided herein; not in any event shall any modifications or waiver of the provisions of this guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which given.

This guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the state of <u>New York</u> and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said State, and no defense given or allowed by the laws of any other state of the United States of America shall be interposed in any action hereon unless defense is also given or allowed by the laws of the State of <u>New York</u>.

By: _____
Stephen Inglis,
Managing Member of Black Tusk Global, LLC

Address: 9 Beechwood Rd,
Irvington, NY 10533

Witness: _____

Stephen Nakajima-Inglis

# Exhibit C

SUBSCRIPTION AGREEMENT

This SUBSCRIPTION AGREEMENT, dated as of April 23, 2018 (this "*Agreement*"), is between Jerome Dewald (the "*Investor*") and Broad Pine Capital LLC, a Delaware limited liability company (the "*Company*").

WHEREAS, the Investor wishes to purchase, and the Company wishes to approve a sale to the Investor, a portion of the membership interest representing fourteen and six hundred twenty-five ten thousandth percent (14.0625%) of the Company's outstanding membership interests immediately following such purchase and sale, on the terms and subject to the conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    Definitions. As used in this Agreement, the following terms shall have the respective meanings indicated:

"*Affiliate*" of any Person means any other Person directly or indirectly controlling, controlled by or under common control with such Person. The term "control" means, with respect to any Person, the power to direct or cause the direction of the management or policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have      meanings correlative to the foregoing.

"*Business Day*" means any day other than a Saturday, Sunday or day on which commercial banks in New York, New York are authorized or required by law to remain closed.

"*Governmental Body*" means any government or governmental or regulatory body thereof, or political subdivision thereof, of any country or subdivision thereof, whether international, supranational, national, federal, state or local, or any agency or instrumentality thereof, or any court or regulatory (including a stock exchange or other self-regulatory body) authority or agency.

"*Person*" means any individual, corporation, limited liability company, limited or general partnership, joint venture, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivisions thereof or any group comprising two or more of the foregoing.

"*Securities Act*" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

2.    Purchase of Membership Interest. Pursuant to the terms and subject to the conditions set forth in this Agreement, the Investor hereby subscribes for and agrees to purchase, and the Company hereby agrees  to approve the sale to the Investor a membership interest in Broad Pine Capital LLC equal to fourteen and six hundred twenty-five ten thousandth percent (14.0625%) of the aggregate Company membership interests outstanding immediately following such sale on a fully-diluted basis (the "*Purchased Interest*") , through the conversion and surrender of the Unsecured Convertible Note issued by Black Tusk Global LLC on August 1st 2016 with a Nominal value of twenty-two thousand five hundred dollars ($22,500), (the "*Purchase Price*").

3.   <u>Representations and Warranties of the Company</u>. The Company hereby represents and warrants to the Investor as follows:

(a) (i) the Company is a limited liability company duly organized, validly existing under the laws of the State of Delaware and has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and (ii) this Agreement has been duly authorized, executed and delivered by the Company and is valid, binding and enforceable against the Company in accordance with its terms;

(b) the Purchased Interest, when issued and delivered in accordance with the terms hereof, will be duly and validly issued and, upon receipt by the Company of the full amount of the Purchase Price, will be fully paid and nonassessable and will not be subject to any preemptive rights and restrictions on transfer other than under applicable securities laws and the terms of this Agreement;

(c) the execution, delivery and performance by the Company of this Agreement will not (i) conflict with the Operating Agreement or other constituent documents of the Company, (ii) result in any material breach of any terms or provisions of, or constitute a material default under, any material contract, agreement or instrument to which the Company is a party or by which the Company is bound, (iii) violate any United States federal or state law, rule or regulation applicable to the Company or (iv) require any consent, waiver, approval, order, permit or authorization of, or declaration or filing with, or notification or report to, any Governmental Body;

(d) immediately after giving effect to the purchase and sale of the Purchased Interest, the capitalization of the Company shall be as set forth on *Exhibit A* hereto; and

(e) the transactions contemplated by this Agreement do not violate any securities law of any jurisdiction or require the Company to file a registration statement with the US Securities and Exchange Commission.

4.   <u>Representations and Warranties of the Investor</u>. The Investor hereby represents and warrants to the Company as follows:

(a) (i)(x) the Investor is over 21 years of age, (y) the address for the Investor set forth in this Agreement is the Investor's true and correct address and residence, and (z) the Investor has no present intention of becoming a resident of any other state or jurisdiction in the foreseeable future, and (ii) this Agreement has been duly authorized, executed and delivered by the Investor and is valid, binding and enforceable against the Investor in accordance with its terms;

(b) the execution, delivery and performance by the Investor of this Agreement will not result in any material breach of any terms or provisions of, or constitute a material default under, any material contract, agreement or instrument to which the Investor is a party or by which the Investor is bound;

(c) the Investor is acquiring the Purchased Interest for investment for its own account and not with a view to, or for sale in connection with, the distribution or other disposition thereof;

(d) the Investor has been advised by the Company that:

(i)  the offer and sale of the Purchased Interest have not been registered under the Securities Act;

(ii) there is no established market for the Purchased Interest and it is not anticipated that there will be any public market for the Purchased Interest in the foreseeable future, and so it may not be possible for the Investor to liquidate his investment; and

(iv) the Purchased Interest may not be disposed of without registration under the Securities Act or in reliance on an exemption from such registration;

(e) (i) the Investor's financial situation is such that he can afford to bear the economic risk of holding the Purchased Interest for an indefinite period of time, has adequate means for providing for his current needs and personal contingencies, and can afford to suffer a complete loss of his investment in the Purchased Interest; (ii) the Investor's knowledge and experience in financial and business matters are such that he is capable of evaluating the merits and risks of an investment in the Purchased Interest; (iii) the Investor understands that the Purchased Interest is a speculative investment which involves a high degree of risk of loss; (iv) the Investor understands the risk factors related to the purchase of the Purchased Interest, and, other than as set forth in this Agreement, no representations or warranties have been made to the Investor concerning the Purchased Interest or the Company; (v) the Investor has been given the opportunity to examine all documents and to ask questions of, and to receive answers from, the Company and its representatives concerning the Company and the terms and conditions of the purchase of the Purchased Interest and to obtain all additional information which the Investor or his representatives deem necessary; (vi) in making its decision to purchase the Purchased Interest hereby subscribed for, the Investor has relied upon his own independent investigations and, to the extent believed by him to be appropriate, his own professional, financial, tax and other advisors; and (vii) the Investor is an "accredited investor" within the meaning of Rule 501 of Regulation D under the Securities Act.

5.   <u>Further Assurances</u>. Each of the parties shall, and shall cause their respective Affiliates under their control to, execute such instruments and take such action as may be reasonably required or desirable to carry out the provisions hereof and the transactions contemplated hereby.

6.   <u>Miscellaneous</u>.

(a) <u>Notices</u>. All notices and other communications required or permitted hereunder shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified; (b) when sent by confirmed facsimile if sent on a Business Day during normal business hours of the recipient, if not, then on the next Business Day, provided that a copy of such notice is also sent via nationally recognized overnight courier, specifying next day delivery, with written verification of receipt; (c) upon receipt by the recipient after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) one (1) Business Day (three (3) Business Days for international deliveries) after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to such party's address as set forth below or at such other address as the party shall have furnished to the other party in writing in accordance with this provision:

If to the Company:

Broad Pine Capital LLC
128 Holbrook Rd
Briarcliff Manor, New York 10533
Attn:  Stephen Inglis, Chief Executive Officer
Email:  stephen@blacktuskglobal.com

If to the Investor:

Jerome Dewald
#0 W 63rd Street Apt 8v    *JWD*
New York, NY 10023
Email:  jeromekjerome@gmail.com

    (b) <u>Amendment and Waiver</u>.

        (i)  Any amendment, supplement or modification of or to any provision of this Agreement, any waiver of any provision of this Agreement, and any consent to any departure by any party from the terms of any provision of this Agreement, shall be effective against a party to this Agreement only if it is made or given in writing and signed by such party.

        (ii) No failure or delay on the part of any party hereto in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The remedies provided for herein are cumulative and are not exclusive of any remedies that may be available to the parties hereto at law, in equity or otherwise.

    (c) <u>Specific Performance</u>. Each party hereto acknowledges that money damages would not be an adequate remedy in the event that any of the covenants or agreements contained in this Agreement are not performed in accordance with their respective terms, and it is therefore agreed that in addition to and without limiting any other remedy or right the non-breaching party may have, the non-breaching party will have the right to an injunction, temporary restraining order or other equitable relief in any court of competent jurisdiction enjoining any such breach and enforcing specifically the terms and provisions hereof.

    (d) <u>Headings</u>. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

    (e) <u>Severability</u>. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, but this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

    (f) <u>Entire Agreement</u>. Except as otherwise expressly set forth herein, this Agreement embodies the complete agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements or representations by or among the parties, written or oral, that may have related to the subject matter hereof in any way.

(g) <u>Expenses</u>. Each of the parties hereto shall bear its own expenses (including fees and disbursements of counsel, accountants and other experts) incurred by it in connection with the preparation, negotiation, execution, delivery and performance hereof, each of the other documents and instruments executed in connection herewith or contemplated hereby and the consummation of the transactions contemplated hereby and thereby.

(h) GOVERNING LAW; JURISDICTION; WAIVER OF JURY TRIAL. THIS AGREEMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE. Any claim arising out of or relating to this Agreement may be instituted in Federal or State court in the State of New York (unless personal or subject matter jurisdiction cannot be obtained therein), and each party agrees not to assert, by way of motion, as a defense or otherwise, in any such claim, that it is not subject personally to the jurisdiction of such court, that the claim is brought in an inconvenient forum, that the venue of the claim is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court. Each party further irrevocably submits to the jurisdiction of such courts in any such claim. Any and all service of process and any other notice in any such claim shall be effective against any party if given personally or by registered or certified mail, return receipt requested, or by any other means of mail that requires a signed receipt, postage prepaid, mailed to such party as herein provided. Nothing herein contained shall be deemed to affect the right of any party to serve process in any manner permitted by law or to commence legal proceedings or otherwise against any other party in any other jurisdiction.

(i) <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the parties and their respective permitted successors and assigns. This Agreement is not assignable by either party.

(j) <u>Counterparts; Facsimile Signatures</u>. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. This Agreement may be executed by facsimile signature(s) and delivered by electronic transmission of a pdf file.

[Remainder of page left intentionally blank]

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Agreement on the date first written above.

Broad Pine Capital LLC

By: *Stephen J Anglis*
_____
Stephen J. Anglis
Chief Executive Officer


_____

*Agreed and consented to*:

Jerome Dewald

*Jerome W. Dewald*
_____

6

*Exhibit A*

### Capitalization of Broad Pine Capital LLC

Stephen Inglis 54.6375%

Stephen Nakajima Inglis 10 %

Ron Shah 2.1%

Morgan Dejoux 15%

Catalyst Partners 2.1%

Paul Richter 2.1%

Jerome Dewald  14.0625

# Exhibit D

 Gmail

**Jerome W. Dewald <jeromekjerome@gmail.com>**

---

# Broad Pine Capital LLC is Dissolved

---

**stephen@blacktuskglobal.com** <stephen@blacktuskglobal.com>        Sun, Dec 30, 2018 at 1:05 PM
To: stephen@blacktuskglobal.com

Members of Broad Pine Capital LLC,

On December 21st AI Capital filed a form BD withdrawal with FINRA, so there is no longer any reason for BPC to continue. I decided that it was best to dissolve BPC before the end of 2018 so those who committed capital can realize the tax loss. There are no contingent liabilities to the Members. No taxes were ever filed nor K-1s issued, and I am happy to provide any additional details or records you may need.


All the best in 2019,


Stephen Inglis

Managing Member




**2 attachments**

📄 **Broad Pine Capital Consent of Members to Dissolve.pdf**
51K

📄 **Form bdw completed.pdf**
58K

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**P**

**PRIORITY MAIL 1-DAY®**

EXPECTED DELIVERY DAY: 07/03/19

SHIP
TO:
40 FOLEY SQ
NEW YORK NY 10007-1502

C014

0005

**USPS TRACKING NUMBER**

9505 5066 6101 9183 0785 96

PS00001000014

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

U.S. POSTAGE
PM 1-DAY
10023 0005
06/02/19
11486527

$7.35

USPS.COM/PICKUP

To schedule free
Package Pickup,
scan the QR code.

FROM: Jerome W. Dewald
30 W 63 Rd Apt 8v
New York NY 10023

Pro Se Intake: Unit
US District Court SDNY
40 Foley Sq Rm 105
New York NY 10027

2019 JUL -9 PM 12:29
S.D.I. OF N.Y.

PRIORITY MAIL
FLAT RATE
POSTAGE REQUIRED

USA MAIL USA

* Domestic only.   * For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.
Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.