USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/13/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEROME W. DEWALD,

                        Plaintiff,

          v.

BLACK TUSK GLOBAL, LLC, BROAD
PINE CAPITAL, LLC, STEPHEN INGLIS,

                        Defendants.

No. 19-CV-6388 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Jerome W. Dewald, proceeding *pro se*, brings this action against Defendants Black Tusk Global LLC, Broad Pine Capital, LLC, and Stephen Inglis for violations of various securities laws, breach of contract, and common law fraud. Plaintiff alleges that Defendants made material misrepresentations during the sale of an equity interest in a limited liability company and then violated the terms of that sale, resulting in the total loss of his $22,500 investment. Now before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim. For the reasons that follow, that motion is granted, albeit without prejudice.

## BACKGROUND

**I.   Factual Background**

    The following facts alleged in the Complaint are assumed to be true for the purposes of this motion. *See, e.g., Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers facts drawn from the various agreements that govern the challenged transaction,

which were incorporated into the Complaint by reference. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

Plaintiff Jerome Dewald, a citizen of New York, "is an investor in the emerging legal cannabis market." Compl. ¶¶ 6, 14. Upon information and belief, Defendants Black Tusk Global, LLC ("Black Tusk") and Broad Pine Capital LLC ("Broad Pine") are limited liability companies domiciled in Delaware that transact business in New York. *Id.* ¶¶ 7-8. Defendant Stephen Inglis, a Canadian citizen and resident of New York at all material times, "is a stockbroker who expressed interest in cannabis investments and wanted to start his own brokerage firm with a focus point being cannabis investments." *Id.* ¶¶ 9, 15.

On an unspecified date, Inglis "proposed to Plaintiff" an opportunity to "buy membership" in a broker-dealer that was then known as Richman Group Securities ("Richman Group"). *Id.* ¶ 16. "Plaintiff agreed to invest $22,500," and on August 16, 2016 executed an unsecured convertible promissory note. *Id.* ¶ 17; *see id.* Ex. A (the "Note"). Pursuant to the Note, Plaintiff's $22,500 investment was "immediately convert[ed]" into a "Membership Interest in Broad Pine Capital LLC, or whichever entity" was to succeed Richman Group. Note at 1. The Note further provided that Plaintiff would be repaid his $22,500 in the event that there was no closing, "defined as 30-45 days after the Continuing Membership Application (CMA) is filed with [the Financial Industry Regulatory Authority]," or "the CMA is withdrawn." *Id.* The Note specified that "the offer and sale of the Convertible Note have not been registered under the Securities Act," and that Plaintiff "is an 'accredited investor' within the meaning of Rule 501 of Regulation D under the Securities Act." *Id.* at 2-3. Inglis personally guaranteed the Note on behalf of Black Tusk. *See* Compl. Ex. B ("Personal Guaranty").

According to Plaintiff, "Inglis le[d him] to believe that there were other investors but Plaintiff was never made aware of any other investors." *Id.* ¶ 19. On April 23, 2018, Inglis, on behalf of Black Tusk, and Plaintiff executed a subscription agreement that granted Plaintiff a 14.0625 percent membership interest in Broad Pine. *Id.* ¶ 21; *id.* Ex. C ("Subscription Agreement"). Pursuant to the Subscription Agreement, Plaintiff's purchased interest in Broad Pine was executed through the "conversion and surrender" of the Note. Subscription Agreement ¶ 1. Plaintiff nonetheless alleges that "Inglis breached the terms of the Note by failing to perform any of the terms outlined therein and allegedly converted Plaintiff's funds into membership interest in Broad Pine." Compl. ¶ 22. Moreover, "Plaintiff was never provided any documentation evidencing his membership interest in Broad Pine." *Id.* ¶ 23. "When Plaintiff would ask about the status of the entity and progress being made, Inglis would placate Plaintiff explaining what stage of the process they were supposedly in." *Id.* ¶ 24. On December 30, 2018, Plaintiff received an email from Inglis that stated:

> On December 21st AI Capital filed a form BD withdrawal with FINRA, so there is no longer any reason for [Broad Pine] to continue. I decided it was best to dissolve [Broad Pine] before the end of 2018 so those who committed capital can realize the tax loss. There are no contingent liabilities to the Members. No taxes were ever filed nor K-1s issued, and I am happy to provide any additional details or records you may need.

*Id.* Ex. D; *see also id.* ¶ 25. According to Plaintiff, "[p]ursuant to the terms of the Note, Defendant was to return all monies to Plaintiff," but has not done so. *Id.* ¶ 26.

II.   **Procedural History**

Proceeding *pro se*, Plaintiff initiated the instant action on July 10, 2019. The Complaint asserts causes of action under federal law for 1) violation of Section 10(b) of the Exchange Act and Rule 10b-5; 2) violation of Section 20(a) of the Securities Act by Inglis; 3) Violation of Sections 5 and 12(a)(1) of the Securities Act; 4) Violation of Section 15 of the Securities Act by

Inglis, and under state law for 5) Breach of Contract; 6) Breach of the Covenant of Good Faith and Fair Dealing; and 7) Common Law Fraud.  Defendants filed the instant motion to dismiss on October 2, 2020.  Dkt. 29 ("Mot.").

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011)).  "Nonetheless, a *pro se* complaint must state a plausible claim for relief."  *Id*.

The Court may consider any "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which [he] relied" in bringing this action.  *ATSI Commc'ns*, 493 F.3d at 98.

Insofar as it asserts causes of action for securities fraud, this action is also subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b).  *See, e.g.*, *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. J.P. Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).  Under this standard, a plaintiff alleging fraud "must state with particularity the circumstances constituting" the alleged fraud. Fed. R. Civ. P. 9(b).  The PSLRA expressly requires plaintiffs alleging securities

fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief ... all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Pursuant to the PLSRA, securities-fraud complaints must also "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. § 78u–4(b)(2)). "Allegations that are conclusory or unsupported by factual assertions are insufficient" to meet that standard. *ATSI Commc'ns*, 493 F.3d at 99.

## DISCUSSION

### I. Whether Plaintiff States a Claim Under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Securities & Exchange Commission ("SEC") Rule 10b-5, prohibit persons from "(1) making 'any untrue statement of a material fact' and (2) from 'omit[ting] to state a material fact necessary in order to make [ ] statements made, in the light of the circumstances under which they were made, not misleading' in connection with the purchase or sale of any security." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 174 (2d Cir. 2020) (quoting 17 C.F.R. § 240.10b-5(b)). To maintain a private damages action under Section 10(b) and Rule 10b-5, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

Defendants argue that Plaintiff has failed to plead several essential elements of a fraud claim with the requisite particularity, and that the Complaint consists largely of mere recitations

of the elements of Plaintiff's cause of action. The Court agrees. With respect to his claim for securities fraud, Plaintiff broadly alleges that Defendants made "false or misleading statement of fact and fail[ed] to disclose material information," Compl. ¶ 3, and made "untrue statements of material fact and omitted material facts necessary in order to make the statements made . . . not misleading, *id*. ¶ 30. These allegations, insofar as they are unsupported by any facts specific to the challenged transaction, are conclusory. Nowhere does the Complaint "specify each statement alleged to have been misleading," 15 U.S.C. § 78u-4(b)(1), let alone why any such statements were false or misleading were made, or why such statements would be material to a reasonable investor. In short, the Court cannot determine from the Complaint what alleged misrepresentations were made by Defendants to induce Plaintiff into entering this transaction, nor whether these misrepresentations relate to his execution of the 2016 Note, the 2018 Subscription Agreement, neither, or both.

Because the Complaint fails to "state with particularity the circumstances constituting" any alleged fraud, these causes of action must be dismissed. *See* Fed. R. Civ. P. 9(b).

**II.     Whether Plaintiff States a Claim Under Section 20(a) of the Securities Exchange Act**

Plaintiff further alleges that Inglis should be held separately liable as a "control person" under Section 20(a) of the Exchange Act. Liability under Section 20(a) is derivative. "In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, and show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person." *S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1472 (2d Cir. 1996) (internal quotation marks, brackets, and citations omitted).

Because Plaintiff has failed to make a prima facie case of a "primary violation" under Section 10(b), he has not adequately pleaded a violation of Section 20(a) by Inglis. Accordingly, that claim is dismissed.

### III. Whether Plaintiff States a Claim for Sections 5, 12(a)(1), and 15 of the Securities Exchange Act

"Section 12(a)(1) establishes civil liability for breach of Section 5 of the Securities Act … which prohibits the use of the mails or means of interstate commerce to offer or sell a security unless it is registered with the [Securities & Exchange] Commission or is exempt from registration." *Cobalt Multifamily Invs. I, LLC v. Arden*, 857 F. Supp. 2d 349, 357 (S.D.N.Y. 2011) (citing 15 U.S.C. §§ 77e, 77l). "To state a cause of action under Section 5, one must show (1) lack of a [required] registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale." *SEC v. Frohling*, 851 F.3d 132, 136 (2d Cir. 2016) (internal quotation marks omitted).

Defendants argue that Plaintiff's claims for the sale of unregistered securities lack sufficient factual allegations to state a claim under Section 5. Specifically, they argue that Plaintiff has failed to allege facts that would allow the Court to infer that Defendants were required to register the securities that they sold or that any instrumentalities of interstate commerce were used in connection with the offer or sale of those securities. The Court addresses each argument in turn.

As an initial matter, no party disputes that the subject securities were not registered with the SEC. Indeed, both the Note and the Subscription Agreement acknowledge that fact. *See* Note at 2; Subscription Agreement ¶ 4(d)(i). Defendants instead maintain that the Complaint does not adequately plead that these securities were not subject to any exemption from the registration requirement. Plaintiff's purported failure to plead the lack of exemption is immaterial, however,

7

as the burden of demonstrating a registration exemption falls on the defendant. *See S.E.C. v. Cavanagh*, 155 F.3d 129, 133 (2d Cir. 1998); *SEC v. Telegram Grp. Inc.,* 448 F. Supp. 3d 352, 365 (S.D.N.Y. 2020) ("If the relevant instruments are securities and a prima facie case of a section 5 violation is then established, the burden shifts to the defendant to show that the securities were exempt from the registration requirement." (internal quotation marks omitted)).

The Court nonetheless agrees that Plaintiff has failed to adequately plead the third element of a Section 5 violation, namely the use of interstate communication or the mails. On this score, Plaintiff alleges only that "Defendants used the instrumentalities of interstate commerce in connection with the offer and sale of shares of Broad Pine Capital." Compl. ¶ 44. The Complaint provides no detail as to how Defendants solicited Plaintiff or other investors for this transaction, or the manner in which the transaction was effectuated. Absent some detail about how Defendants used the channels of interstate commerce to sell Broad Pine securities, such a "[t]hreadbare recital[] of [an] element[] of a cause of action," does not suffice to state a claim, *Iqbal*, 556 U.S. at 678; *see Cobalt,* 857 F. Supp. 2d at 358 (finding that testimony that defendant's representative "solicited investors" failed to establish that defendant "made calls or used other means of interstate commerce"). Indeed, none of the allegations or documents incorporated into the Complaint indicate that any relevant conduct took place outside of the state of New York. Nor do they permit such an inference. Plaintiff's Section 5 claim must therefore be dismissed.

Section 15 of the Act imposes liability on control persons of companies that have violated Section 5. *See* 15 U.S.C. § 77o. "Claims brought under Section 15 are entirely dependent on the success of the underlying violation." *Feldman v. Concord Equity Partners, LLC*, No. 08-CV-4409 (CS), 2010 WL 1993831, at *5 (S.D.N.Y. May 19, 2010) (citing cases). Since Plaintiff's Section 5 claim fails for the reasons stated above, his Section 15 claim must fail as well.

**IV.    State Claims**

Plaintiff's remaining claims—for breach of contract, breach of the covenant of good faith and fair dealing, and common law fraud—all sound in state law. Having dismissed of all Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over those claims. A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In the "usual case in which all federal-law claims are eliminated before trial," the relevant factors of "judicial economy, convenience, fairness, and comity" counsel in favor of declining jurisdiction. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal quotation marks omitted). The Court finds that those factors counsel in favor of dismissal here.

**V.    Leave to Amend**

Pursuant to Fed. R. Civ. P. 15(a)(2), a court should freely grant leave to amend "when justice so requires." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (describing the standard set forth in Rule 15 as "permissive"). Moreover, "[a] *pro se* complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted). Because Plaintiff may be able to cure the deficiencies in his Complaint by pleading additional facts, the Court will permit him to file an amended complaint if he has a good-faith basis to do so.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is granted without prejudice to amend. If Plaintiff chooses to file an amended complaint, he shall do so by no later than September 3, 2021. Failure to file an amended complaint by that date will result in dismissal of this case with prejudice.

Should Plaintiff need assistance, he may wish to consult the New York Legal Assistance Group's legal clinic for pro se litigants, by visiting its website at nylag.org/pro-se-clinic/ or by calling (212) 659-6190. This clinic, which is neither part of nor run by the Court, assists pro se litigants with federal civil cases.

The Clerk of Court is respectfully directed to terminate the item at docket number 33.

SO ORDERED.

Dated: August 13, 2021
       New York, New York

Ronnie Abrams
United States District Judge